# In the United States Court of Federal Claims

No. 14-689C
(Filed: June 9, 2016)*
*Opinion originally issued under seal on June 7, 2016

| | |
|---|---|
| CELESTE SANTANA,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>　　　　　　Defendant. | Military Pay Act, 37 U.S.C. § 204;<br>Military Whistleblower Protection Act,<br>10 U.S.C. § 1034; Lack of Jurisdiction;<br>Administrative Remedies |

*John B. Wells*, Slidell, LA, for plaintiff.

*Douglas G. Edelschick*, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Benjamin C. Mizer*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director, for defendant. *Major Dawn M. Steinberg*, Office of the Judge Advocate General, Department of the Navy, *of counsel*.

## OPINION

**FIRESTONE**, *Senior Judge*.

Plaintiff Lieutenant Commander ("LCDR") Celeste Santana filed a complaint in this court under the Military Pay Act, 37 U.S.C. § 204, alleging that she was improperly separated from the Navy. The case is now before the court on the parties' cross-motions for judgment on the administrative record ("MJAR") pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). Gov't MJAR, ECF No. 21; Pl.'s MJAR,

ECF No. 32.  Also before the court is LCDR Santana's motion to strike a portion of the administrative record ("AR").  ECF No. 19.

LCDR Santana alleges that, after seventeen years of service, she was forced to retire under 10 U.S.C. § 632[1] after she was passed over twice by promotion boards and then a continuation board did not recommend her for continued active duty service. LCDR Santana alleges that she was not selected for promotion and was not allowed to continue because she received unsatisfactory fitness reports.  She alleges that these reports were written in retaliation for her efforts to alert individuals in the Navy about the dangers of burning garbage in open pits near military bases in Afghanistan.  She states in her brief that "[a]t the core of this case, lies the issue of the long-term governmental cover-up of the health effects of open air burn pits and other toxic exposures."  Pl. Reply 7, ECF No. 38.  She alleges that the Navy's retaliation also is reflected in the record before the promotion and continuation boards, which she claims "was rife with inaccurate information based on reprisal and coverups."  Id. at 4.  She also alleges that the decision to discharge her amounts to a detachment for cause but that the Navy failed to follow proper procedures again in reprisal for "her failure to cover up the environmental health problems and for her reports of health and safety issues outside the chain of command."

---

[1] "[E]ach officer of the Navy . . . who holds the grade of lieutenant or lieutenant commander, who has failed of selection for promotion to the next higher grade for the second time and whose name is not on a list of officers recommended for promotion to the next higher grade shall . . . be discharged . . ." absent enumerated exceptions.  10 U.S.C. § 632(a)(1).

Id. at 11-12.[2]  Finally, plaintiff alleges that the Navy's decision to discharge her from active duty was arbitrary and capricious because it was made in retaliation for reporting the burn pits and thus her discharge was not in accordance with Navy regulations.  LCDR Santana seeks to have all of her negative fitness reports removed from her record and to be reinstated with back pay.

For the reasons that follow, the court finds that the court does not have jurisdiction to determine the merits of LCDR Santana's arguments that any negative personnel decisions were taken in retaliation of what amounts to alleged whistleblowing activities. The court finds that the Military Whistleblower Protection Act ("MWPA"), 10 U.S.C. § 1034, sets forth an exclusive remedy for alleged retaliation against whistleblowers in the military.  Therefore, this court is not authorized to look behind the fitness reports the Navy relied upon in discharging LCDR Santana to determine if they were written in retaliation for her alleged complaints regarding open pit burning.  Although LCDR Santana argues that she is not challenging her discharge pursuant to the MWPA, and instead is bringing a claim under the Military Pay Act challenging the Navy's compliance with its rules and regulations, the court reads her allegations as stating a whistleblowing claim, which cannot be reviewed in this court under the guise of a Military Pay Act claim.  If LCDR Santana is able to establish under the administrative procedures set in the MWPA that her discharge was based on actions taken in retaliation for her reporting

---

[2] A detachment for cause is a type of removal that is formally adjudicated by the Naval Personnel Command.  Military Personnel Manual ("MILPERSMAN") ¶¶ 5, 9, 11, 14, 15.

on open pit burning, she may then seek to set aside her discharge on the grounds of retaliation.  However, until then, her Navy fitness reports must be accepted as lawful expressions of the Navy's evaluation of LCDR Santana's fitness to serve.

Further, the court agrees with the government that, even if the plaintiff is correct that the court can consider her allegations of retaliation in the context of a Military Pay Act case, the court nevertheless lacks jurisdiction to review the Navy's decision not to promote or retain LCDR Santana because she did not exhaust a mandatory administrative review process before filing her suit in this court.  Specifically, the court finds that pursuant to 10 U.S.C. §§ 628 and 1558, LCDR Santana was required to seek review of the promotion boards' non-selection decisions and the continuation board's non-retention decision to a special selection board before seeking review in this court.  Finally, the court finds that LCDR Santana's contention that the Navy's actions amounted to a "detachment for cause" must be rejected.  Her objections to her discharge on this ground are without merit.

Consequently, the court now **DENIES** plaintiff's cross-motion for judgment on the administrative record.  The court also **DENIES** plaintiff's motion to strike from the administrative record the materials related to her post-discharge administrative challenge which she withdrew before filing this action.[3]  The court finds that these materials are relevant to understanding the jurisdictional issues before this court.  The court **GRANTS**

---

[3] Plaintiff seeks to strike Volume III of the Administrative Record ("AR"), which includes documents relating to plaintiff's 2011 petition before the Board of Corrections of Navy Records ("BCNR"), which LCDR Santana withdrew before the BCNR rendered a decision.

the government's cross-motion for judgment on the administrative record with respect to

LCDR Santana's allegations that her separation was a detachment for cause.  The

remainder of LCDR Santana's claims are **DISMISSED** for lack of jurisdiction.

## I.      BACKGROUND

LCDR Santana served on active duty in the Navy for seventeen years until she was

honorably discharged in January 2011.  Once an officer has reached the rank of lieutenant

commander, it is up to a selection board to recommend further promotions.  See 10

U.S.C. § 611(a).  If a selection board does not select a lieutenant commander twice, the

officer will typically be discharged.  10 U.S.C. § 632(a).  However, a Navy officer who

has not been selected for promotion twice may still be selected by a continuation board to

continue on active duty service "whenever the needs of the service require."  10 U.S.C. §

611(b).  Retirement based on not being selected twice for promotion "shall be considered

to be an involuntary retirement or discharge for purposes of any other provision of law."

10 U.S.C. § 632(b).  In this case, LCDR Santana went before a selection board twice, first

in March 2009 and second in March 2010, and was not selected for promotion to the next

higher grade of Commander either time.  Following the March 2010 selection board

decision, a continuation board did not recommend that LCDR Santana be selected for

continuing active duty service and she was discharged.

On December 17, 2009, LCDR Santana filed a complaint with the Inspector

General ("IG") of the Department of Defense ("DOD") in accordance with the MWPA.

AR VIII 1.  After considering her complaint, the DOD IG "found insufficient evidence of

reprisal to warrant further inquiry and. . . closed [LCDR Santana's] case."  Id.  The DOD

IG found that LCDR Santana had been redeployed from Afghanistan early "due to substandard performance and received an adverse Fitness Report accordingly."  Id.  The DOD IG informed LCDR Santana that she had the right to petition the Board of Correction of Naval Records ("BCNR") if she wished to further pursue the matter.  Id.[4]

The March 2010 selection board based its decision on materials that LCDR Santana submitted, AR II 170-214 and her military record including four fitness reports, see AR II 31-32 (Feb. 2010 fitness report for period from Nov. 2009 through Feb. 2010); AR II 35-36 (Jan. 2010 fitness report for period from Aug. 2008 through Oct. 2009); AR II 37-38 (Aug. 2008 fitness report for period from Nov. 2007 through Aug. 2008); AR II 39-40 (Dec. 2007 fitness report for period from Feb. 2007 through Oct. 2007).  The first two fitness reports, which were also considered by the March 2009 selection board, AR I 39-42, were generally positive, but put LCDR Santana in the bottom half of her peer group in terms of promotion recommendation.  According to the August 2008 fitness report, eight out of sixteen officers, including LCDR Santana, were ranked "promotable" while four were ranked "must promote" and four were ranked "early promote."  AR I 40. The December 2007 fitness report states that nine out of twenty officers, including LCDR Santana, were ranked "promotable" while six were ranked "must promote" and four were ranked "early promote."  AR I 42.

---

[4] LCDR Santana has attached to her MJAR a number of documents discussing the dangers of open burn pits and evidence that such pits were operated in violation of applicable environmental regulations.  These documents are not relevant to the jurisdictional question presented in this case and have not been considered by the court.

LCDR Santana's January 2010 fitness report, which covered August 2008 through October 2009, praised LCDR Santana's commitment to her position but raised concerns about LCDR Santana's ability to work with others, stating that "[w]hile steadfastly committed to excellence in environmental health, LCDR Santana's inability to establish mutually beneficial working relationships with those both senior and junior to her has impaired her effectiveness." AR II 36. The January 2010 fitness report reflected that LCDR Santana was one of five officers who received a "promotable" recommendation while three officers received recommendations of "must promote" and two were ranked "early promote." Id.

LCDR Santana's February 2010 fitness report, covering the period from November 2009 through February 2010 was considerably more negative. That report gave LCDR Santana the lowest rating of "significant problems," and asserted that:

> During this reporting period, LCDR Santana's contributions to the hospital's mission have been negligible. [She] [a]ctively resists and requires an inordinate level of oversight to complete valid mission requirements. [Her] [u]nrelenting fixation on personal administrative matters has left her little time for productive work. Due to her confrontational interpersonal style and inability to collaborate effectively she failed to complete the single project assigned to her. LCDR Santana has failed to meet minimal expectations of an officer of her grade despite a disproportionate expenditure of time and energy by my senior staff, including the Executive Officer, to redirect her energies. Her constant need for supervision and counseling on appropriate military bearing and behavior and her inability to accomplish her work has had a corrosive and deleterious effect on the achievement of the command's mission. LCDR Santana is not recommended for promotion or retention.

AR II 32. After the March 2010 board decided not to promote LCDR Santana, these fitness reports, along with her military record and documents submitted by LCDR

Santana were brought before a continuation board, AR II 20-214, which did not

recommend LCDR Santana for continuation of active duty service.  AR III 8.

  After briefing on the parties' cross-motions for summary judgment was

completed, the court ordered supplemental briefing on the relevance of <u>Klingenschmitt v.</u>

<u>United States</u>, 119 Fed. Cl. 163, 185 (2014), aff'd, 623 F. App'x 1013, 1014 (Fed. Cir.

2015), and <u>Wilson v. James</u>, --- F. Supp. ----, 2015 WL 5952109 at *14-15 (D.D.C.

2015).  Those cases hold that Congress intended the MWPA to be a comprehensive

scheme for addressing actions allegedly taken in retaliation for whistleblowing activities,

and thus federal courts lacked jurisdiction over claims premised upon negative personnel

actions allegedly taken in retaliation for whistleblowing activities.  The court also asked

the parties to address the question of whether, assuming the MWPA precluded the court's

jurisdiction over LCDR Santana's claim, it would be appropriate to remand the matter to

the agency while maintaining jurisdiction so that LCDR Santana could pursue her

administrative remedies under the MWPA, or if the court was required to dismiss the

case entirely.

  Supplemental briefing concluded on December 21, 2015.[5]  Oral argument was

held on March 14, 2016.  Four days before oral argument, the government filed a notice

with the court arguing for the first time that the court does not have jurisdiction over this

---

[5] By the time supplemental briefing was complete, the Federal Circuit affirmed the Court of
Federal Claims decision in <u>Klingenschmitt</u> without opinion.  623 F. App'x 1013.  However, the
plaintiff in <u>Klingenschmitt</u> did not appeal the holding in the Court of Federal Claims that a
Military Pay Act claim could not be premised on a violation of the MWPA.

case pursuant to 10 U.S.C. §§ 628(h) and 1558(f), because under those sections, LCDR Santana was required to seek review of her non-promotion decision from a special selection board before seeking judicial review.  ECF No. 48.  The court gave the parties an opportunity to submit briefing on this new jurisdictional issue, which was completed on May 23, 2016.  See Pl.'s 2d Supp. Brief, ECF No. 54; Def.'s 2d Supp. Brief, ECF No. 58.  Though plaintiff disputes the government's contention that 10 U.S.C. §§ 628(h) and 1558(f) preclude the court from hearing this case, LCDR Santana filed a letter with the Navy requesting review of the continuation board's decision by a special board pursuant to § 1558.  Pl.'s 2d Supp. Brief Ex. 1.  The government filed a notice stating that the Navy anticipated either granting or denying plaintiff's request by approximately July 15, 2016.  ECF No. 51.

## II.     LCDR SANTANA'S MOTION TO STRIKE IS DENIED

As noted above, LCDR Santana has moved to strike from the administrative record her post-discharge application to the BCNR to correct her negative fitness report and the advisory opinions produced by the BCNR in response to LCDR Santana's petition.  LCDR Santana argues that because she withdrew her petition before the BCNR rendered a decision, and because the documents in AR III were not used as part of the Navy's removal decision, the documents are not relevant and should be stricken.  The government argues that the materials were included only to show that LCDR Santana filed an administrative appeal after she was discharged, which she then withdrew.

The court agrees with the government that the documents before the BCNR are relevant to the issue of jurisdiction and are part of LCDR Santana's military record now

before the court.  It is relevant that LCDR Santana challenged her discharge before the

BCNR but dismissed her challenge before a final BCNR decision was issued. Therefore,

plaintiff's motion to strike is denied.

## III.    STANDARD OF REVIEW

RCFC 52.1 provides for motions for judgment on the administrative record. The

court will grant a motion for judgment on the administrative record "only if 'a party has

met its burden of proof based on the evidence in the record.'" N. Carolina Bus. Enters.

Program v. United States, 110 Fed. Cl. 354, 367 (2013) (quoting Towne v. United States,

106 Fed. Cl. 704, 709 (2012)).  Unlike the standard for a motion for summary judgment,

genuine issues of material fact do not preclude a judgment on the administrative record,

and the court may make factual findings from the administrative record.  Young v. United

States, 497 F. App'x 53, 59 n.8 (Fed. Cir. 2012) (citing Bannum v. United States, 404

F.3d 1346, 1355-56 (Fed. Cir 2005)).

The court's review of the agency's finding is "limited to determining whether a

decision of the [agency] is arbitrary, capricious, unsupported by substantial evidence, or

contrary to applicable statutes and regulations."  Id. at 59 (quoting Heisig v. United

States, 719 F.2d 1153, 1156 (Fed. Cir. 1983)).  In the context of reviewing the military's

personnel decisions under the Military Pay Act, the Federal Circuit has noted that

"civilian courts are reluctant to second-guess decisions of the military authorities as to

promotion, separation, or reassignment" because this court "lacks the special expertise

needed to review reserve officers' records and rank them on the basis of relative merit."

Antonellis v. United States, 723 F.3d 1328, 1332 (Fed. Cir. 2013) (quoting Sargisson v.

United States, 913 F.2d 918, 922 (Fed. Cir. 1990)); see also Frey v. United States, 112

Fed. Cl. 337, 346 (2013) ("The Court of Federal Claims . . . defers to administrative

decisions regarding a service member's fitness for duty." (quoting Peterson v. United

States, 104 Fed. Cl. 196, 204 (2012))).  Further, a claim under the Military Pay Act is

nonjusticiable unless the regulation alleged to have been violated provides "tests or

standards for the court to apply."  Antonellis, 723 F.3d at 1334 (quoting Voge v. United

States, 844 F.2d 776, 780 (Fed. Cir. 1988)).

## IV.   DISCUSSION

### A.   The Court Lacks Jurisdiction to Consider LCDR Santana's Allegations that the Navy's Non-Promotion and Continuation Decisions Were Made in Retaliation of her Alleged Reporting Open Pit Burning

The Court of Federal Claims has subject matter jurisdiction generally over claims

cognizable under the Military Pay Act.  Antonellis, 723 F.3d at 1331 (citing Dysart v.

United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004)).  This court does not, however, have

jurisdiction to hear complaints that involve allegations of whistleblowing and retaliation

that are subject to the MWPA, which instead "provides a fairly elaborate administrative

process for handling complaints of retaliatory personnel actions that commences with a

complaint filed with the Inspector General and can culminate in an appeal to the

Secretary of Defense." Klingenschmitt, 119 Fed. Cl. at 185 (citing 10 U.S.C. § 1034(c)-

(h)).  Courts have found that this "comprehensive scheme" indicates that Congress

intended the MWPA's administrative procedures to be an exclusive remedy, and

therefore "Congress did not intend to provide plaintiffs with a private cause of action to

enforce their rights under the MWPA in court." Id. (citing Soeken v. United States, 47

Fed. Cl. 430, 433 (2000) (finding that the MWPA "provides solely an administrative process for handling complaints of improper retaliatory personnel actions"); see also Aquisito v. United States, 70 F.3d 1010, 1011 (8th Cir. 1995) (finding that the MWPA's "statutory language, the legislative history, and administrative regulations" demonstrate that Congress "did not intend any private cause of action."); Hernandez v. United States, 38 Fed. Cl. 532, 536–37 (1997); Brezler v. Mills, 86 F. Supp. 3d 208, 220 (E.D.N.Y. 2015) ("[T]his Court concludes, as other courts have held, that no private right of action exists under [the MWPA]" (citations omitted)); Penland v. Mabus, 78 F. Supp. 3d 484, 495 (D.D.C. 2015) (finding that the court did not have jurisdiction over an alleged violation the MWPA because "when Congress has established a specific form of redress, it precludes alternative fora."); Bryant v. Military Dep't of State of Miss. ex rel. Miss. Air Nat. Guard, 381 F. Supp. 2d 586, 590 (S.D. Miss. 2005), aff'd sub nom. Bryant v. Military Dep't of Mississippi, 597 F.3d 678 (5th Cir. 2010) (finding the MWPA "provides only an administrative remedy and not a private cause of action." (citations omitted)).

The question before this court is whether its Military Pay Act jurisdiction extends to this case, in which the plaintiff has brought a case under the Military Pay Act that is premised upon what amounts to allegations of whistleblower retaliation activities by a member of the military.  In two recent cases, Klingenschmitt, 119 Fed. Cl. 163, 185 (2014), aff'd, 623 F. App'x 1013, 1014 (Fed. Cir. 2015), and Wilson v. James, --- F. Supp. ----, 2015 WL 5952109 at *14-15 (D.D.C. 2015), the courts examined the extent to which retaliation claims based on whistleblower activity can be heard in connection with

claims under the Military Pay Act, <u>Klingenschmitt</u>, 119 Fed. Cl. at 185, or under the Administrative Procedures Act ("APA"), <u>Wilson</u>, 2015 WL 5952109 at *15.  In <u>Klingenschmitt</u>, the plaintiff brought a claim under the Military Pay Act alleging, among other things, that his discharge was in violation of the First Amendment, the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, and was retaliatory in violation of the MWPA.  <u>See</u> Complaint, <u>Klingenschmitt v. United States</u>, 119 Fed. Cl. 163 (2014) (No. 11-723), ECF No. 1.  The court noted that even though the Court of Federal Claims lacked jurisdiction over a freestanding claim brought under the First Amendment or RFRA because neither is money-mandating, the court nevertheless could consider whether the government had violated RFRA or the First Amendment in the context of the plaintiff's Military Pay Act claim, over which the court did have Tucker Act jurisdiction. <u>Klingenschmitt</u>, 119 Fed. Cl. at 184-85.  The <u>Klingenschmitt</u> court went on to explain, however, that retaliation claims covered by the MWPA are different.  Specifically, the court found that Congress "intended the MWPA claims be adjudicated under the detailed administrative process set forth in the statute . . . ."  <u>Id.</u>  The court observed that "[t]he existence of this comprehensive scheme establishes that Congress did not intend to provide plaintiffs with a private cause of action to enforce their rights under the MWPA in court."  <u>Id.</u> (citing <u>Soeken</u>, 47 Fed. Cl. at 433 and <u>Acquisto</u>, 70 F.3d at 1011). Therefore, the court concluded that "to the extent that [plaintiff] wished to challenge his

removal under the MWPA, he was required to follow the administrative scheme set forth in that Act," and could not bring suit in this court under the Military Pay Act. Id.[6]

The court in Wilson performed a similar analysis when it decided that it did not have jurisdiction over an APA claim premised on an alleged violation of the MWPA. In that case, the plaintiff filed an APA claim challenging a number of disciplinary actions allegedly taken in retaliation for his religious expression. Wilson, 2015 WL 5952109 at *14. Like the court in Klingenschmitt, the Wilson court reviewed the text of the MWPA, as well as the DOD Directive implementing its remedial provisions, and found that "[t]here can be little doubt that, where Congress and the DOD have developed such a comprehensive scheme to address allegations of retaliatory conduct, an aggrieved member of the military, like Plaintiff, must first exhaust administrative remedies before coming to federal court and seeking review under the APA." Id. at *15. [7]

---

[6] Another decision of this court has came to the opposite conclusion, finding that though the MWPA did not provide an independent cause of action, "to the extent that potential violations of plaintiff's rights under the Whistleblower Act, the First Amendment or the Due Process Clause are a factor in plaintiff's Military Pay Act claim, the court may consider such violations in its determination of the merits of plaintiff's Military Pay Act claim." Volk v. United States, 111 Fed. Cl. 313, 326 (2013). The court in Volk did not explicitly address the question of whether Congress intended the administrative remedies in the MWPA to be exclusive, and ultimately found that the government was entitled to judgment on the administrative record with respect to plaintiff's Military Pay Act claim. Id. at 334. The court finds that the reasoning in Klingenschmitt and other cases is more persuasive, and thus declines to follow Volk.

[7] The court in Wilson indicated that had the plaintiff exhausted his administrative remedies, the court would have had jurisdiction under the APA. See id. The court notes that LCDR Santana did not exhaust her administrative remedies under the MWPA because she withdrew her petition from the BCNR before a final adjudication. AR III 3; see 10 U.S.C. § 1034(g)(4). The MWPA states that a petitioner "shall be deemed to have exhausted the member's or former member's administrative remedies" if the Secretary does not issue a decision on the petitioner's application within 180 days of the BCNR's decision. 10 U.S.C. § 1034(g)(4).

This court agrees with the reasoning of <u>Klingenschmitt</u> and <u>Wilson</u> and finds that where Congress has created an intricate administrative remedial scheme to resolve whistleblower allegations, the court is bound to follow Congress's directive and cannot rely on the Military Pay Act to undermine Congress's express intent.  In this regard, the court is not bound by the label plaintiff has given to her claim.  Her retaliation claims in this case fit squarely within the ambit of the MWPA, and the fact that she did not invoke the MWPA as the basis for her cause of action in this court is of no moment.  Indeed, plaintiff started the MWPA process and elected not to pursue the matter after the IG rejected her whistleblower complaint.  To allow her to bring a whistleblower claim under the guise of a Military Pay Act claim would undermine Congress's intention of creating an exclusive remedy within the military.

In view of the statutory language and foregoing precedent, the court finds that LCDR Santana's attempt to circumvent the MWPA's administrative process and secure judicial review of her alleged retaliation claims as part of her Military Pay Act case must be rejected.  LCDR Santana made a whistleblower claim to the IG as required by the MWPA. The IG determined, as discussed above, that there was no evidence to show she was a whistleblower.  If LCDR Santana disagrees with the IG's findings, she must pursue the procedures for challenging this decision by submitting an application to a correction board.  10 U.S.C. § 1034(g)(1).   She cannot, however, in the context of this case seek to show that her discharge was the result of retaliation based on her alleged whistleblowing. LCDR Santana's claims that her negative fitness reports and sexual harassment were all taken in retaliation for her actions challenging open pit burning in Afghanistan. This

court does not have jurisdiction to consider those claims.  Accordingly, those claims

cannot serve as a basis for overturning the discharge decision.[8]

**B.      The Court Lacks Jurisdiction over LCDR Santana's Challenge to the Selection and Retention Boards' Decisions because she has not Exhausted Mandatory Administrative Remedies**

On the eve of oral argument, the government filed a notice with the court stating

that 10 U.S.C. §§ 628(h) and 1558(f) preclude this court from reviewing any of LCDR

Santana's claims because those statutes require service members to seek review of

decisions of selection boards and retention boards before special selection boards prior to

challenging those decisions in this court.  LCDR Santana disputed the government's

assertion that §§ 628 and 1558 precluded the court from taking jurisdiction over this case,

but nevertheless filed a request that a special board be convened pursuant to 10 U.S.C. §

1558 to review the continuation board's decision to separate LCDR Santana from active

duty service.

Section 628 governs judicial review of selection boards under 10 U.S.C. § 611(a),

including the two boards that reviewed LCDR Santana's records for promotion in 2009

and 2010.  See 10 U.S.C. § 628(k) ("In this section, the term "promotion board" means a

---

[8] This is not to say that LCDR Santana's retaliation claims are without merit.  In this regard, had the IG determined that LCDR Santana's negative fitness reports had been written in retaliation for whistleblowing and the Navy had discharged her based on those reports this case would be different. In that instance, the court would not be called upon to review whether there had been retaliation but would have determined, once retaliation was established, if the Navy had acted contrary to law by discharging her. Thus, if LCDR Santana elects to challenge the IG decision rejecting her whistleblowing and retaliation allegations and is successful, she will have a basis for challenging her discharge before the BCNR, and if the BCNR does not abide by the law, she can challenge that decision in this court.

selection board convened by the Secretary of a military department under section 573(a)

or 611(a) of this title.").  This provision states that:

> If the Secretary of the military department concerned determines, in the
> case of a person who was considered for selection for promotion by a
> promotion board but was not selected, that there was material unfairness
> with respect to that person, the Secretary may convene a special selection
> board under this subsection to determine whether that person (whether or
> not then on active duty) should be recommended for promotion. In order to
> determine that there was material unfairness, the Secretary must determine
> that--
>> (A) the action of the promotion board that considered the person was
>> contrary to law in a matter material to the decision of the board or
>> involved material error of fact or material administrative error; or
>> (B) the board did not have before it for its consideration material
>> information.

10 U.S.C. § 628(b)(1).  This court has jurisdiction over challenges to the Secretary's

decision not to convene a special selection board, 10 U.S.C. § 628(g)(1)(A) ("A court of

the United States may review a determination by the Secretary of a military department  .

. .  not to convene a special selection board in the case of any person"), and over

challenges to the special selection board's decision if one is convened, 10 U.S.C. §

628(g)(2) ("A court of the United States may review the action of a special selection

board convened under this section or an action of the Secretary of the military department

concerned on the report of such a board.").

    Section 1558 sets up a parallel procedure for special selection boards convened to

review the decision of continuation boards, including the board that reviewed LCDR

Santana's records in March of 2010 pursuant to 10 U.S.C. § 611(b).  See 10 U.S.C. §§

1558(a), 1558(b)(2).  Like § 628, § 1558 gives this court jurisdiction to review the

decision of a special selection board, 10 U.S.C. § 1558(f)(3) ("A court of the United

States may review a recommendation of a special board or an action of the Secretary of the military department concerned on the report of a special board."); or the Secretary's decision not to convene a special board, 10 U.S.C. § 1558(f)(2)(A) ("A court of the United States may review a determination by the Secretary of a military department not to convene a special board in the case of any person.").

However, under both §§ 628 and 1558, the court lacks jurisdiction to review the decision of a promotion or continuation board unless the decision is first considered by a special selection board.  See 10 U.S.C. § 628(h)(1) ("No official or court of the United States may, with respect to a claim based to any extent on the failure of a person to be selected for promotion by a promotion board--(1) consider the claim unless the person has first been referred by the Secretary concerned to a special selection board convened under this section and acted upon by that board and the report of the board has been approved by the President . . . ."); 10 U.S.C. § 1558(f)(1) ("A person seeking to challenge an action or recommendation of a selection board, or an action taken by the Secretary of the military department concerned on the report of a selection board, is not entitled to relief in any judicial proceeding unless the action or recommendation has first been considered by a special board under this section or the Secretary concerned has denied the convening of such a board for such consideration.").

Though LCDR Santana has submitted a request for review of the continuation board's decision pursuant to § 1558, she maintains that she cannot request a special selection board under § 628 and thus this court has jurisdiction.  Section 628 states that the Secretary may convene a special board if the Secretary determines that there was

"material unfairness with respect to that person." 10 U.S.C. § 628(b).  LCDR Santana

states that there has been no determination of material unfairness, and claims that the

Secretary "refused to consider LCDR Santana's request for such determination" in the

context of LCDR Santana's withdrawn petition for review of her records before the

BCNR.  Pl.'s 2d Supp. Brief 2.  However, LCDR Santana's reading ignores the

provisions of § 628 that allow for judicial review of the Secretary's decision not to

convene a special board.  10 U.S.C. § 628(g)(1)(A) ("A court of the United States may

review a determination by the Secretary of a military department  . . .  not to convene a

special selection board in the case of any person.").  However, in this case, the Secretary

never made a decision not to convene a special board, and therefore there is no decision

for LCDR Santana to challenge before this court.[9]

Even if LCDR Santana were correct that she could not now seek a special board

pursuant to § 628 to review the decision of the two promotion boards that considered her

records, LCDR Santana can—and has—sought special board review pursuant to § 1558

challenging the decision of the continuation board that led directly to her removal.  The

court finds that until the § 1558 process is complete, the court lacks jurisdiction to review

---

[9] The government notes that in her petition before the BCNR, LCDR Santana requested a
"special promotion board to substitute missed opportunity at the FY-12 AD and Reserve
Commander Staff Promotion Board."  AR III 6.  The government states, without explaining how,
that the BCNR "could have made a recommendation to the Secretary of the Navy regarding her
claims of material unfairness and her request for a special selection board."  Def.'s 2d. Supp.
Brief 5.  Whether or not this was an adequate request for a special board, see Crumley v. United
States, 122 Fed. Cl. 803, 806 (2015) (finding that the Air Force Board for Correction of Military
Records was not a "special board" as defined in 10 U.S.C. § 1558 unless specifically designated
as such by the Secretary), it is undisputed that no decision was made on the request because
LCDR Santana withdrew her petition, AR IV 3-4.

the continuation board's decisions and must now dismiss her claims challenging the merits of the continuation board's decision.

LCDR Santana's reliance on <u>Martinez v. United States</u>, 333 F.3d 1295, 1303-04, for the principle that exhaustion of administrative remedies is generally not required for claims under the Military Pay Act to be cognizable in this court is misplaced.  While it is true that a plaintiff is not required to seek review from the BCNR to correct the underlying records before filing a case, in this case, LCDR Santana is challenging the decision of selection and continuation boards, thus triggering the provisions of 10 U.S.C. §§ 628 and 1558.  Section 1558 expressly states that a service member "is not entitled to relief in <u>any</u> judicial proceeding unless the action or recommendation has first been considered by a special board . . . ."  10 U.S.C. § 1558(f)(1) (emphasis added). Therefore, this more specific statute overrides the general rule that the plaintiff need not seek further administrative review from the BCNR before filing suit in this court.

The fact that the Navy never informed plaintiff of the need to seek consideration by a special board is irrelevant.  Though the court agrees that it would have behooved the Navy to have raised this issue earlier in the proceedings, the fact remains that § 1558 is a jurisdictional bar that cannot be waived.  <u>See, e.g.</u>, <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 514 (2006) (finding that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived"); <u>Crumley</u>, 122 Fed. Cl. at 807 (finding that "[a]s unfair as it may seem, defendant cannot be estopped from raising the exhaustion defense in this instance because it is directly relevant to our jurisdiction.").  It is for this same reason that the court cannot grant LCDR Santana's request to stay this

case pending her request for a special selection board. This court cannot stay a case after finding that it lacks jurisdiction. <u>See</u> <u>Harris Patriot Healthcare Sols., LLC v. United States</u>, 95 Fed. Cl. 585, 597 (2010) (after finding that the court lacks jurisdiction, "[s]taying the case while retaining jurisdiction is simply not an option" because the court "<u>must</u> dismiss the action" (emphasis in original) (citing RCFC 12(h)(3))).[10]

### C.   LCDR Santana's Negative Fitness Report was not a Detachment for Cause

Separate from her primary arguments relating to her whistleblower activities and the failure to promote, LCDR Santana also argues that the January 2010 fitness report was in effect a detachment for cause ("DFC") and that the Navy did not follow proper procedures for issuing a DFC. The court finds that it has jurisdiction over this claim, but that after reviewing the administrative record this argument must be rejected.

A DFC is a type of removal that is formally adjudicated by the Naval Personnel Command. MILPERSMAN ¶¶ 5, 9, 11, 14, 15. Plaintiff argues that her adverse fitness report acted as DFC, but because the Naval Personnel Commander never approved the detachment, her removal did not comport with MILPERSMAN regulations. However, the court finds that the January 2010 fitness report did not operate as a DFC. LCDR

---

[10] In addition to her primary arguments relating to wrongful discharge for her whistleblower activities, LCDR Santana also presents several additional procedural arguments, which she also argues merit reversal of the discharge decision. Specifically, plaintiff argues that the adverse February 2010 fitness report relied upon by the continuation board did not include "her awards and several medals" and that Colonel Amland, who signed the adverse fitness report, lacked authority to do so and consequently "both the signature and the document are invalid." Pl.'s MJAR 9. The court finds that these issues are ancillary to LCDR Santana's challenges to the continuation board's decision, and thus LCDR Santana cannot bring an independent challenge on those grounds without first completing the processes in § 1558.

Santana was not separated from the Navy until her record had been fully reviewed by the March 2010 selection board and the continuation board, in accordance with the procedures set in 10 U.S.C. § 632. Therefore, the fitness report could not have been a DFC.  LCDR Santana's objection to her discharge on this basis is therefore rejected.

## V.    CONCLUSION

For the reasons stated above, LCDR Santana's motion to strike Volume III of the Administrative record is **DENIED**.  LCDR Santana's cross-motion for judgment on the administrative record is **DENIED**.  The government's cross-motion for judgment on the administrative record is **GRANTED IN PART** with respect to LCDR Santana's allegations that her separation was a detachment for cause.  The remainder of LCDR Santana's claims are **DISMISSED** for lack of jurisdiction.  The clerk is instructed to enter judgment accordingly.  No costs.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge